## J. W. FLANAGAN v. J. J. CARY, ADM'R, ETC.

1. On a replevin bond for certain slaves claimed by heirs adversely to L. and wife, F. became surety for L. and wife, and from them obtained possession of the slaves as an indemnity against his liability on the bond. Pending the litigation between the heirs and L. and wife, F. retained the possession and use of the slaves, and in the meantime purchased from two of the heirs their undivided interests in the slaves. The heirs recovered judgment against L. and wife for the slaves, and demanded them from F., who refused to surrender them except upon terms not conceded by them; and they then (in January, 1865) sued F. for the value and hires of the slaves. This suit was protracted until after the enactment of the United States Bankrupt Law of March 2d, 1867, under which F. obtained a discharge from his debts, and pleaded the same in bar of the suit. *Held*, that though F. may have been indebted to the plaintiffs for their proportion of the hires of the slaves which accrued prior to emancipation, yet his indebtedness was not tortious or fraudulent within the meaning of the 33d Section of the Bankrupt Act; and therefore his discharge was a bar to the action.

2. When a material and traversable allegation of fraud constitutes the sole foundation of an action, the demand may be said to be one founded in fraud, and not affected by the discharge of the defendant as a bankrupt; but when the defendant's indebtedness resulted, as in this case, from an implied assumpsit, irrespective of fraud, the 33d Section of the Bankrupt Law does not apply, and the discharge is a bar to the action.

ERROR from Rusk. Tried below before the Hon. J. B. Williamson.

This case is the sequel of Little *v.* Birdwell, 21 Texas, 597, and 27 Texas, 688, and shows what has ultimately gone with the subject-matter of that protracted litigation. A full history of the entire matter will be found in the volumes just referred to. The present plaintiff below, Cary, was the administrator *de bonis non* of Richard J. Ball's estate, suing in the interest of Ball's heirs. The head-notes show the nature of his action.

*Hancock & West*, for the plaintiff in error, to show that Flanagan's liability was not of a fiduciary nature, cited Hayman *v.* Pond, 7 Metcalf, 328; Anstell *v.* Crawford, 7 Alabama, 335;

Chapman *v.* Forsyth, 2 Howard, U. S., 202; and other authorities.

*W. Stedman,* for the defendant in error. The foundation of this suit was laid in 1855, by a suit at the instance of the heirs of Richard J. Ball, deceased, against his administrators, for certain slaves which they charged belonged to them under the will of their ancestor, and which the administratrix, Elizabeth A. Little (formerly the wife of Ball), claimed as her separate property. In that suit the slaves were sequestered, and the plaintiff in error, Flanagan, was surety for the administrators upon their replevy bond. For his indemnity as such surety, the administrators, as is shown by his answer to this suit, delivered the slaves into his possession, and agreed that he should pay no hire for them. The slaves remained in his possession until they were freed by the results of the late war. The suit was finally determined by this court in favor of the heirs (See case of Little *v.* Birdwell, 21 Texas Rep.), and the administrators were required to report the slaves to the County Court of Rusk county, as part of the estate of Ball, and to distribute them amongst the plaintiffs as soon as the estate was ready for distribution.

The heirs attempted to obtain the fruits of the judgment, but were met in the County Court by two applications of the administratrix, one for a homestead, and the other for a year's allowance. These proceedings also made their way to the Supreme Court, and were decided adversely to the administratrix. In all these proceedings the plaintiff in error was the counsel of the administrators, and surety upon their appeal bonds in these last proceedings. The whole matter was engineered by him, and every obstacle which his ingenuity could devise was thrown in the way of the rightful owners of the property, until they were finally deprived of it by the emancipation laws.

While these proceedings were in progress, the plaintiff in error bought the shares of two of the heirs, and the others more than once demanded their shares of him, which he refused to yield unless they would give him one slave more than he

was entitled to.   The above facts are admitted by the answer of plaintiff in error, Flanagan, and proved by the witness Bagley. The administrators were removed from office, and the defendant in error was appointed administrator *de bonis non* of Ball's estate, and brought this suit against plaintiff in error, for the slaves and their hires.   The plaintiff in error, Flanagan, also pleaded and proved his discharge in bankruptcy.   The cause was submitted upon the law and facts to the court, who gave judgment against the said Flanagan for two thousand five hundred dollars, being two-thirds of the hire of the slaves from the time they were delivered into his possession until they were emancipated.

Upon these facts the question is :

*First.*   Is Flanagan liable for the hire of the slaves ?   To say nothing of his wrongful, collusive, and litigious acts, by which the heirs of Ball were deprived of the use of their property, there can be no question that, by acquiring the possession of the slaves in the manner and for the purpose he did, he is chargeable as trustee for them.

Judge Story, in his Equity Jurisprudence, Vol. II., page 628, says : " It is upon this ground that persons colluding with the " executor or administrator in a known misapplication of the " assets of the estate are made responsible for the property in " their hands ; for they are treated as purchasers with notice, " and thus as mere trustees of the parties who are entitled to the " assets, the latter being a trust fund under the administration of " the executor or administrator."   And this is the general doctrine upon the subject ; see Lewin on Trustees, pages 577 and '8.   It is too well settled to require the production of authority, that a person who comes into possession of the property of another, by whatever means, is liable to the owner, not only for the property, but also for the value of its use, especially when he refuses to deliver it up on demand.   In this case Flanagan, in his schedule in bankruptcy, admitted his liability for the hire of the slaves, and estimated it at the sum of five thousand dollars.

*Second.* But the plaintiff in error, Flanagan, insists that this liability was included in his bankrupt discharge, and that the defendant in error is barred by his certificate. We think not. The 33d Section of the Bankrupt Law of 1867 provides that no debt created by a person acting in a fiduciary character shall be discharged under this act. In Re Seymour (See Note *b* to Bump on Bankruptcy, page 112), it was said that the above language seems to have been intentionally made so broad as to extend to a debt created by a defalcation of the bankrupt, while acting in any fiduciary capacity, and not to be confined to any special fiduciary capacity. A claim against a person for withholding the proceeds arising from the sale of goods consigned to him to be sold on commission, is a debt contracted by him in a fiduciary capacity. If, according to the doctrine laid down in Story and cited above, Flanagan, by his manner of dealing with this property, became a trustee for the owners, then it necessarily follows that the debt for which the judgment in this case was given, was created by him while acting in a fiduciary capacity, and is therefore unaffected by his bankrupt discharge.

We believe also that Flanagan is liable to the defendant in error for this debt, notwithstanding his discharge, upon another ground named in the statute, viz. : fraud; but it seems so clear that his liability as trustee exists, that it is thought unnecessary to discuss that branch of the question.

*Third.* It was contended below, and may be here, that the defendant in error, as administrator *de bonis non*, has no right in law to maintain this suit; but it will be seen by referring to the judgment in the case of Ball's heirs against the administrators, that the slaves were declared to be the property of the estate of Ball, and were required to be held by the administrators until that estate was in a condition for distribution; and it will also be seen from the facts of this case, that no steps for the settlement of the estate have been taken. Hence the necessity of an administrator *de bonis non*, and the propriety of the institution of this suit by him.

WALKER, J. This suit was instituted in January, 1865. The plaintiff claimed certain slaves, and the value of their hire for a term of years.

The only question presented on the appeal for our consideration is, was a discharge in bankruptcy a good defense to the plaintiff's demand?

The District Court held that the liability was of such a character as a discharge in bankruptcy would not relieve against. The court was no doubt governed by the interpretation given to the 33d Section of the General Bankrupt Act of March 2d, 1867, which reads as follows : " No debt contracted by the fraud " or embezzlement of the bankrupt, or while acting in a fidu- " ciary capacity, shall be discharged under this act."

It is by no means clear to our minds under what particular class of liabilities the court placed that claimed in this case— whether it was regarded as a debt contracted through fraud, a liability resulting through embezzlement, or a debt growing out of some fiduciary trust ; and we are sorry that we are not much enlightened by the brief of counsel who upholds the judgment of the District Court.

If the transaction out of which the liability arose is fairly stated in the record, the facts are these:—Having become security for Little and wife on a replevin bond, the appellant took the property from them as an indemnity against contingent liability. The property consisted of several slaves. Little and wife were administrators of the estate of Richard J. Ball. There appears to have been protracted litigation between the heirs and administrators of Ball's estate. Pending the litigation, the slaves remained in the custody of the appellant, who, having purchased the interest of two of the heirs of Ball in the slaves, refused to give them up when demanded, except upon the terms of his being allowed to retain a certain one of the slaves for his interest in the whole.

We see nothing in the possession of these slaves on the part of the appellant, which can be regarded as tortious or fraudulent. His possession of the slaves, after his purchase of an interest in them, was that of one tenant in common. He was liable to his

co-tenants for their share of the rents, issues, and profits of these slaves, and incurred a debt to them which might have been proved under the bankrupt law.

Had the liability grown out of tort, it might nevertheless have been proved against the bankrupt, and his discharge in bankruptcy would bar its enforcement. . (See *ex-parte* Brook, 3 McLean, 371.) If, then, his discharge would relieve him against a liability growing out of the forcible possession of the slaves, it would be difficult to conceive why a liability growing out of their peaceable and legal possession should not come within the same rule. It is said in Bump's Bankruptcy, page 392, 3d ed., that a judgment rendered in an action of trespass for an assault and battery would be released by a discharge in bankruptcy.

But the action in this case is something in the nature of the common law action of trover; and although we do not think the facts make out such a wrongful conversion as would have entitled the plaintiff to a recovery, yet, if such had been the case, and judgment rendered in the action previous to the bankrupt's discharge, it would have been a provable debt, and, under the authorities referred to, would have been barred by a subsequent discharge. To bring a case within the rule of fraud as provided in Section 33 of the General Bankrupt Law, it is well stated in Re Whitehouse, 4 B. R., 15, that where the record of the action shows a material and traversable allegation of fraud, as its sole foundation, the demand or debt may be said to be one founded in fraud. The liability of the appellant for the hire of the slaves did not depend upon good or bad faith.

The same may be said as to the slaves themselves. He was simply liable on an implied assumpsit for the hire of the slaves. He was liable for so much of the value of the slaves as did not belong to him, provided they had remained property, but he cannot be made liable for the loss of the slaves by emancipation, and his discharge in bankruptcy was a good defense to the action.

The judgment of the District Court will therefore be reversed, and the cause dismissed.

Reversed and dismissed.